Mr. Justice Cox
delivered the opinion of the court.
This case has the appearance, at first, of great complication. It grows out of certain contracts between Shipman, originally, with the United States for the construction of dikes on the Ohio river, and it also grows out of some four or five contracts made between Shipman and Magarity. But when we come to sift the facts, we find there is really no complication in the case at all, and that it is very simple. The facts are as follows :
Shipman, having a contract with the United States for the construction of two crib dikes on the Ohio river — one on the Ohio and one on the Kentucky side — -took Magarity and *335 Hoover into partnership with him on the terms that they should furnish security and money to' enable him to execute his contract, and in consideration thereof should receive one-tenth of the profits. :
This agreement was made July 24,'1879'. 'Work proceeded under it until the fall, daring -which time the dike on the Ohio side had been nearly completed, but no work was done on the Kentucky side. Disagreement arose between the parties, and a new contract was made, first verbally, and afterwards reduced to writing on February 28,1880, according to which Shipman was to completé,the dike on the Ohio side and receive all the profits on that part of the work as his share of the profits of the partnership, and Magarity was to complete the dike on the Kentucky side and receive all the profits on that as his share of the entire partnership profits. Shipman was also to exéétiie to. Magarity a full power of attorney to draw all fund’s to become due on account of this contract. ;>• .
But on April 29, 1880, still anotlier agreement was made,, according to which Magarity assumed to finish the whole work on both sides of the river, and,-was to receive all the profits to arise from such work, and Shipman agreed to enlarge his power of attorney so as to enable him to draw all moneys for the entire work. By this agreement Shipman went out of the partnership, and ceased to have any interest in the work except in having it cornpleted so as to relieve him from liability on his contract with the United States. Magarity’s only contract with him was .to finish the work for the United States. He occupied the position of a public contractor. Magarity partially executed the work, but failed to complete it according to agreement..
It is obvious that this threw upon Shipman the burden of employing some one else to complete- it or of doing it himself. And the natural and proximate damage that would result to Shipman from Magarity’s failure..to perform, would be the cost to him of having the work so completed.
But instead of proceeding independently to protect himself from loss by going on with the work, he entered into a *336 new agreement with Magarity on the 16th of October, 1880, by which he undertook to do the work which Magarity had agreed to do, in consideration of one-third of the profits to be received from the contract, Magarity agreeing to furnish the money and appliances necessary for the vigorous prosecution of the work.
It seems to be very clear that this contract was a substitute for and a settlement of all that had preceded, and that if it had been faithfully performed by Magarity, Shipman would have had no claim against him upon any of the antecedent •agreements, even if no profit should be realized from the work. Supposing Magarity to fail in the execution of this •agreement, what was Shipman’s proper remedy? If, with Magarity’s aid in money and material, as contracted for, the work could be finished at a cost which would leave a certain •margin of profit in the contract price to be paid by the United States, and in consequence of Magarity’s failure to ¡supply the promised facilities, the cost of the work was increased to Shipman, so as to lessen or extinguish the profit, this increased cost was a damage to Shipman, and furnished him a cause of action against Magarity.
But the argument for’the defense has proceeded upon an •entirely different theory. It is claimed that when Magarity failed to perform fully his agreement of April 29, 1880, to complete all the unfinished work, Shipman had the right to ignore that agreement and all rights of Magarity under it, entirely ; to treat it as if it had never been made, and to •deal with Magarity simply as a trustee or agent receiving •and disbursing money on Shipman’s account, and bound to account for the surplus of his receipts above disbursements. And while it is admitted that this relation between them, and his right of ignoring the contract of April, 1880, were temporarily changed and suspended by the agreement of October 16, 1880, and would have been permanently so if that had been carried out, it is contended that since this last’ agreement was also itself violated, this in turn may be disregarded and the parties treated as relegated to their rights and relations which antedated it. In other words, it is claimed that both *337 agreements of April and October, 1880, having been broken by Magarity, Shipman is entitled to treat them both as rescinded, and hold him accountable accordingly. It does not seem very clear what advantage the defendant would derive from this, for if these two agreements are rescinded the effect would be to revive the former one of February 28, 1880, which entitled Magarity to complete the Kentucky dike and to take all the profits of such work. But in fact this view of defendant’s counsel, which seems to have been adopted by the auditor, ignores a vital principle in the law of contracts, which may be stated in the language of Parsons, vol. II, p. 678, that a person may not treat a contract as rescinded “ if the failure of the other party be but partial, leaving a distinct part as a subsisting and executed consideration, and leaving also to the other party his action for damages for the part not performed. Generally, no contract ■can be rescinded by one of the parties unless both can be restored to the condition in which they were before the ■contract was made. If, therefore, one of the parties has derived an advantage from a partial performance, or so disposed of property bought that he cannot restore it, he cannot hold this and consider the contract as rescinded because •of the non-performance of the residue.”
Now, it is conceded that a considerable part of the work ¡stipulated by the agreement of April, 1880, was performed by Magarity and enured to the benefit of Shipman in his contract with the United States. And Shipman neither ■could, nor, if he could, did he offer to restore the value of that to Magarity, and without that he had' no right to rescind. The same remarks apply to the last contract of October 16, 1880.
Instead of simply suing Magarity for not going on to complete the work, or of proceeding on his own account to finish it, arid then suing Magarity for the cost, Shipman adjusted ■all unsettled matters by a new agreement, under which, for what he deemed an adequate consideration, he assumed Magarity’s obligation to finish the work, ;and thus released the latter from any liability for not doing it. Instead of *338 even attempting to rescind the former contract, he released and discharged it. The consideration of his new undertaking was Magarity’s agreement to continue to advance means and appliances for the execution of the work, and to allow Shipman one-third of the profits.
It is conceded that Magarity did supply the necessary means with which the work was prosecuted until the working season of that year closed. He refused to proceed further for reasons appearing in the record. But it was too-late then'for Shipman to rescind the last agreement, because-he had received the-benefit of a partial performance, and all that he is entitled to is to recover the damages he has-sustained by this last breach of contract, which, as already stated, would be determined in part, or wholly, by the increase occasioned in the expense of completing the work by Magarity’s failure.
He is not entitled to go back and have an account taken of anything done before October, 1880, or to claim, as he-does, for the decrease on the value of the contract with the-United States at that time, in consequence of Magarity’s previous failure. For at that time he had no interest whatever in the profits of the contract, and he then, with his eyes open, voluntarily accepted a share of the contingent profit as a full reward for his undertaking to finish the work. Neither, for the'-same reasons, is he entitled to an allowance for the time consumed by him in finishing the-work, for he agreed to take the chance of profit in full for his time and labor.
The conclusion we have come to is, that if either one of' theseparties has a cause of action against the other, it is a legal cause of action. If Shipman has a right to recover against Magarity, it is a matter very easily liquidated. It is a claim for damages by a contract that was measured by the increased cost to which he was subjected by Magarity’s failure to furnish means. If Magarity, on the other hand, had furnished the promised facilities in the shape of material and other things, then perhaps he might, in a court of equity, be en~ tited to call upon Shipman by a bill for discovery and ac *339 count of profits. But inasmuch as he did not, but ceased in the middle of the work to furnish these means, he had no right to claim part of the profits qua profits. If he was justified in so stopping, by some breach of the contract on the other-side, he may have his action of damages therefor.
The conclusion of the court, therefore, is that both bills, be dismissed without prejudice to the right of these parties to proceed at common law.